IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RYAN A. WATSON,<br>LATONYA K. WATSON, and<br>STEVEN L. WATSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| THE STATE OF MARYLAND,<br>MAYOR AND CITY COUNCIL OF<br>BALTIMORE,<br>BALTIMORE CITY SHERIFF'S<br>OFFICE,<br>SHERIFF SAMUEL I. COGEN, | ) ) ) ) ) ) ) | Case no: |
| FEDERAL HILL NEIGHBORHOOD<br>ASSOCIATION, INC.,<br>UPPER FELLS POINT<br>IMPROVEMENT ASSOCIATION, INC., | ) ) ) ) | |
| KATE GRABOWSKI, in her individual<br>capacity;<br>THE JOHNS HOPKINS UNIVERSITY;<br>and | ) ) ) ) ) | |
| DOE DEFENDANTS 1–10, in their<br>individual capacities, | ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

Plaintiff, Ryan Watson ("Plaintiff" or "Mr. Watson"), by and through his undersigned counsel, hereby files this Complaint against Defendants The State of Maryland, Mayor and City Council of Baltimore ("Mayor" or "City Council"); Sheriff Samuel L. Cogen ("Sheriff Cogen" or "Mr. Cogen"); Baltimore City Sheriff's Office ("Sheriff's Office" or "BCSO"); Federal Hill Neighborhood Association, Inc. ("FHNA"); Upper Fells Point Improvement Association, Inc.

("UFPIA"); Kate Grabowski ("Ms. Grabowski"); The Johns Hopkins University("Johns Hopkins"); and Doe Defendants 1-10 ("Doe") and alleges as follows:

## INTRODUCTION AND NATURE OF ACTION

1.  This civil action arises from a coordinated effort by public officials and private actors to interfere with, damage, and ultimately dismantle Plaintiffs' lawful short-term rental ("STR") business operations in Baltimore City.

2.  Plaintiffs Ryan A. Watson, Latonya K. Watson, and Steven L. Watson are Black property owners and business operators associated with lawful STR properties in Baltimore City.

3.  Beginning in or around December 2022, Defendants engaged in a coordinated campaign to prevent Plaintiffs from obtaining, maintaining, and operating lawful STR licenses and business operations through selective enforcement, improper regulatory interference, defamatory communications, coordinated complaints, misuse of law-enforcement authority, and racially discriminatory treatment.

4.  Defendants' conduct was not motivated by legitimate public-safety concerns or neutral licensing enforcement. Rather, the campaign was driven by hostility toward Plaintiffs as Black property owners and business operators conducting STR activity in predominantly white neighborhoods.

5.  Defendant Sheriff Samuel I. Cogen and members of the Baltimore City Sheriff's Office ("BCSO") improperly inserted themselves into neighborhood and licensing disputes despite the absence of criminal complaints, police reports, or legitimate law-enforcement predicates.

6.  Upon information and belief, BCSO personnel acted in concert with private neighborhood actors, including Defendant Kate Grabowski and affiliated neighborhood associations, to pressure city agencies and third-party platforms to interfere with Plaintiffs' business operations.

7. Defendants coordinated complaint campaigns, disseminated false and defamatory information regarding Plaintiffs and their business operations, and improperly leveraged governmental relationships to deprive Plaintiffs of business opportunities, licensing rights, contractual relationships, and equal treatment under the law.

8. Defendants' conduct caused Plaintiffs severe financial harm, loss of business income, reputational injury, emotional distress, interference with contractual and economic relationships, and deprivation of constitutional and civil rights.

9. Plaintiffs bring this action pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Maryland constitutional law, and Maryland common law.

## JURISDICTION AND VENUE

1. This Honorable Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. § 1343 as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically over Plaintiffs' federal constitutional and statutory claims arising under 42 U.S.C. §§ 1981 and 1983. Supplemental jurisdiction over state law claims exists under 28 U.S.C. § 1367(a).

2. This Honorable Court has personal jurisdiction over Defendants because the Defendants reside in, are domiciled in, transact business in, perform work in, or possess interests in property in Maryland, including Baltimore City.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the Defendants reside, carry on a regular business, are employed, or habitually engages in a vocation in Baltimore City, Maryland.

**PARTIES**

4. Plaintiff Ryan A. Watson is an adult Black male, and a resident of Baltimore City, Maryland, with a primary address at 1815 Gough Street, Baltimore, Maryland 21231. At all relevant times, Ryan A. Watson held City-issued short-term rental License No. STR-949452 for 1815 Gough Street and operated a licensed short-term rental business.

5. Plaintiff Latonya K. Watson is an adult Black female, and a resident of Ellicott City, Maryland. Latonya K. Watson is the mother of Plaintiff Ryan A. Watson. At all relevant times, Latonya K. Watson held City-issued short-term rental License No. STR-963684 for 409 S. Regester Street, Baltimore, Maryland 21231, issued by DHCD on or about August 30, 2022.

6. Plaintiff Steven L. Watson is an adult individual and a member of the Watson family. At all relevant times, Steven L. Watson held City-issued short-term rental License No. STR-963747 for 1721 Gough Street, Baltimore, Maryland.

7. Defendant State of Maryland ("Maryland") is a sovereign state of the United States and is responsible for the operation, oversight, funding, supervision, and control of Maryland state agencies and instrumentalities, including agencies and officials acting under color of Maryland law.

8. Defendant Mayor and City Council of Baltimore is the municipal corporation for Baltimore City, Maryland, and is headquartered at 100 Holliday Street, Baltimore, Maryland 21202.

9. Defendant Baltimore City Sheriff's Office is the Sheriff's Office involved in the events alleged in this Complaint and is named for prospective relief to the extent permitted by law. BCSO's principal place of business is located at 100 N. Calvert Street, Room 104, Baltimore, Maryland 21202.

10. Defendant Sheriff Samuel I. Cogen was, at relevant times, Sheriff of Baltimore City and a final policymaking official for the Baltimore City Sheriff's Office with respect to the Sheriff's Office functions alleged in this Complaint.

11. Defendant Federal Hill Neighborhood Association, Inc. is a private neighborhood association alleged to have coordinated and communicated with public officials and private actors concerning Plaintiffs and their properties. Defendant Federal Hill Neighborhood Association's mailing address is PO Box 6477 Baltimore Maryland 21230.

12. Defendant Upper Fells Point Improvement Association, Inc. is a private neighborhood association alleged to have coordinated and communicated with public officials and private actors concerning Plaintiffs and their properties. Defendant UFPIA's mailing address is PO Box 38315, Baltimore, Maryland 21231.

13. Defendant Kate Grabowski is a private individual alleged to have communicated with public officials and neighborhood actors concerning Plaintiff Ryan A. Watson.

14. Defendant The Johns Hopkins University is an institutional defendant alleged to be connected to Defendant Kate Grabowski through institutional email infrastructure and public institutional affiliation. Defendant's principal place of business is 3400 N. Charles Street, 113 Garland Hall, Baltimore Maryland 21218. Defendant's resident agent is Tiffany Wright, SVP & General Counsel, 3400 N. Charles Street, 113 Garland Hall Baltimore Maryland, 21218.

15. Doe Defendants 1–10 are presently unidentified individuals or entities alleged to have participated in, directed, approved, ratified, or assisted conduct described in this Complaint. Plaintiffs will seek leave to amend this Complaint to substitute the true names of Doe Defendants when their identities are ascertained.

## FACTUAL ALLEGATIONS

16. Plaintiff Ryan A. Watson is a Black homeowner in Baltimore City who held City-issued short-term rental License No. STR-949452 for 1815 Gough Street, Baltimore, Maryland 21231, issued on or about February 18, 2022.

17. Plaintiffs Latonya K. Watson and Steven L. Watson separately held City-issued short-term rental licenses for 409 S. Regester Street and 1721 Gough Street, respectively.

18. The pleaded events arise from a multi-year course of conduct involving DHCD, BCSO, the Office of the City Council President, private neighborhood associations, and private individuals who coordinated enforcement activity, speech-related referrals, administrative complaints, and public or private accusations concerning Plaintiffs and their properties.

19. The challenged campaign began no later than October 2022 and continued through at least 2025, and included administrative enforcement activity, law-enforcement activity, public-records disputes, and post-filing conduct.

20. Ryan Watson operated a short-term rental business that generated $351,868.90 in Airbnb gross earnings in 2022, the full pre-enforcement baseline year identified in Plaintiffs' transaction records.

21. Ryan Watson's Airbnb revenue fell to $16,754.57 by August 2023 and to $0.00 by September 2023 after the challenged enforcement and deplatforming activity.

22. Ryan Watson suffered loss of platform status, online reviews, search ranking, goodwill, business income, credit standing, reputational standing, and emotional well-being, together with out-of-pocket costs and bankruptcy-related harm.

23. DHCD caused or procured the removal of Ryan Watson's Airbnb listings before any hearing, neutral adjudication, or sustained finding of violation.

24. On or about October 12, 2020, a neighborhood association complaint pipeline was established whereby local neighborhood associations such as Federal Hill Neighborhood Association and Upper Fells Point Improvement Association established lines of communications with Baltimore City officials.

25. On or about December 4, 2022, Pamela Howard — a private individual and FHNA-aligned neighbor — sent a direct email complaint about Plaintiff's short-term rental to newly sworn-in Sheriff Samuel I. Cogen. Cogen had assumed office on November 30, 2022. Within four days of taking office, Cogen directed the Baltimore City Sheriff's Office to open what internal BCSO records denominate as a "criminal investigation" into Plaintiff's short-term rental licensing.

26. In December 2022, contemporaneous with the BCSO investigation launch, private neighborhood actors — including FHNA-affiliated individuals — posted online statements asserting, falsely, that Plaintiff was under "civil and criminal investigation."

27. On or about March 8, 2023, Defendant McGinnis met Plaintiff at the Baltimore City courthouse to discuss STR licensing requirements. McGinnis later memorialized in a written email to City Council President Zeke Cohen — dated August 30, 2023, 3:01 PM UTC — that he was "originally referred to Ryan Watson by the Baltimore City Sheriff's Office." That single sentence is dispositive on the question of origination: DHCD's investigation of Plaintiff was not initiated by DHCD. It was initiated by BCSO — an agency with no statutory jurisdiction over STR licensing — and DHCD received Plaintiff as a referral target from a law enforcement office. McGinnis further stated that he "sat on it for several months," and then, on or about July 10, 2023, was

"advised by the Sheriffs" that Plaintiff was "back up and operating" on a different website. BCSO was providing active surveillance tips to DHCD about Plaintiff's business operations throughout this period. DHCD used those tips as investigative predicates to escalate administrative action.

28. On or about March 21, 2023, McGinnis internally reported that Plaintiff "is the subject of a joint investigation between [DHCD] SIU and the Sheriff's Office" concerning Plaintiff's STR operations and characterized Plaintiff's listings as "illegal" despite the absence of any neutral adjudication on the matter. In the same internal communications, McGinnis confirmed that DHCD was coordinating with the Sheriff's Office as part of "Sheriff Cogen's platform" and described DHCD and the Sheriff's Office "teaming up" on enforcement. DHCD staff then sought confirmation that they should "not do anything" in response to Plaintiff's inquiry regarding oversight and management of the Special Investigations Unit — a directive to stonewall Plaintiff while enforcement escalated behind his back. These communications establish coordinated, predetermined enforcement and an institutional directive to conceal that coordination from Plaintiff.

29. In or about July 2023, Henderson sent McGinnis a written communication stating: "I have more than enough to take down all of his properties." McGinnis responded in writing that he could "take down his properties directly from the portal." The language "all of his properties" reflects the false narrative — circulated by Defendants and neighborhood actors — that Plaintiff owned multiple properties. Plaintiff did not own multiple properties. He operated one licensed STR. The reference to taking down "all" listings through the Airbnb portal is an explicit written admission that DHCD viewed the government-to-platform enforcement pipeline as a tool for targeted business destruction, not neutral regulatory compliance.

30. On or about July 6, 2023, McGinnis convened a bi-weekly task force specifically targeting Plaintiff's residence at 1815 Gough Street for trash and code citations. (Ex. B5.) Not a single one of the nineteen or more trash-related 311 complaints against Plaintiff's property resulted in a sustained citation. DHCD inspectors repeatedly found no violation. No other STR operator, homeowner, or landlord in Baltimore City was subjected to a comparable bi-weekly targeted task force. The task force was unique to Plaintiff and unique to this campaign.

31. McGinnis also maintained what internal communications describe as an "extra file" of complaints about Plaintiff — a practice applied to no other STR operator in Baltimore City. In a citation hearing that was ultimately dismissed, DHCD attempted to attribute a photograph of a neighbor's trash receptacle to Plaintiff's property, falsely representing a neighboring property's trash as Plaintiff's to manufacture a citation-record entry. That misrepresentation — using a photograph of someone else's trash to support a citation against Plaintiff — is documented fabrication of enforcement evidence, not regulatory enforcement.

32. McGinnis's personal animus toward Plaintiff is documented in his own writing. In an email dated June 28, 2025, McGinnis told neighbors that Plaintiff was "the bane of [his] existence." McGinnis boasted he could take down Plaintiff's business "with [his] child climbing on him" from home — a statement made before there had been any neutral adjudication on the matter and that reflected his personal satisfaction in the destruction of a licensed business. McGinnis circulated false claims that Plaintiff owned multiple properties. He stated to City officials that the STR law was "poorly written and over-burdensome" — an admission from the enforcement official himself that the legal basis for enforcement was legally untenable — yet continued to enforce it exclusively against Plaintiff. McGinnis stated in MPIA-sensitive communications that he was hesitant to release information required by law under MPIA because

he believed Plaintiff would "act out against the neighborhood" — a statement premised on the racialized characterization of Plaintiff as "big and black and aggressive," as documented in internal communications. These statements, collectively, establish that McGinnis's enforcement of the STR ordinance against Plaintiff was personal, retaliatory, and race-inflected, not neutral and regulatory.

33. On July 17, 2023, Defendant McGinnis issued DHCD Citation No. 56837610 against Plaintiff for the property at 1815 Gough Street, listing the stated violation as: "Failure to obtain license to operate short-term residential rental." (Ex. B7.) This language accused Plaintiff of operating with no STR license at all — a materially different, and far more stigmatizing, accusation than any dispute about hosted-versus-unhosted eligibility or residency-interpretation compliance.

34. DHCD records reflected that Citation No. 56837610 had been issued and that all Airbnb listings would be removed from the platform before any hearing occurred.

35. An administrative hearing was held before the Baltimore City Environmental Control Board ("ECB") on November 9, 2023. In the ECB's written decision dated December 8, 2023, the Hearing Officer found that Plaintiff's STR license "remains valid" and ordered that if DHCD had already suspended or revoked the license before the hearing decision, the license "should be immediately reinstated." Citation No. 56837610 was dismissed with a $0.00 balance. This occurred after the economic harm had already occurred.

36. DHCD applied similar pre-hearing platform-removal mechanisms to the separately licensed short-term rental operations of Latonya K. Watson and Steven L. Watson.

37. Latonya K. Watson held valid STR License No. STR-963684 for 409 S. Regester Street when DHCD caused removal of her Airbnb listings through the government-to-platform

enforcement portal, and that DHCD failed to sustain enforcement against her property on the merits after the pre-hearing economic consequences had already been imposed.

38. Steven L. Watson held valid STR License No. STR-963747 for 1721 Gough Street, and that City counsel Richard Rudasill issued or participated in an administrative subpoena dated September 26, 2023, representing to Airbnb that License No. 963747 was "currently revoked" even though the revocation hearing was scheduled for October 5, 2023. This representation was false, as a pending revocation hearing did not mean that there was an already an actual revocation of Steven Watson's license.

39. David McGinnis, then Director of DHCD's Special Investigations Unit, prepared or maintained a timeline stating that he met with Ryan Watson on March 8, 2023, at the request of the Baltimore City Sheriff's Office regarding short-term rentals operated by Raw Properties LLC.

40. McGinnis separately wrote to the City Council President that he was originally referred to Ryan Watson by the Baltimore City Sheriff's Office.

41. McGinnis's timeline recorded the issuance of Citation No. 56837610 on July 17, 2023, the December 8, 2023, hearing-officer ruling overturning the revocation of STR License No. 949452, and the City's later appeal of the license reinstatement.

42. DHCD relied on database searches and platform reviews rather than an in-person inspection, neutral interview, or direct observation of occupancy conditions at Ryan Watson's property, and McGinnis acknowledged in internal communications that the STR law was poorly written, over-burdensome, and could not be enforced equitably.

43. On or about September 8, 2023, McGinnis accessed, obtained, or circulated an identity-database report containing sensitive personal identifying information for Ryan Watson and members of his family, including Social Security numbers, dates of birth, family relationships, address histories, and other personal identifiers.

44. DHCD used platform or transaction data to identify and contact Ryan Watson's guests or customers in an effort to obtain adverse statements against him.

45. Baltimore City's short-term rental ordinance and related portal framework enabled access to platform and guest transaction data, and that Defendants used Airbnb portal access and guest information for investigative purposes directed at Ryan Watson rather than for neutral regulatory verification.

46. McGinnis engaged in ex parte communications with the Environmental Control Board, including receipt of hearing materials for Citation No. 56837610 outside of the formal record and made accusatory statements to ECB personnel concerning Ryan Watson, including an accusation of perjury.

47. DHCD circulated an internal "Security Information — Ryan Watson" thread or designation while licensing disputes, MPIA requests, and petitioning activity were pending. The designation included derogatory language such as "petty"; and Ryan Watson received no notice, standards, criteria, or appeal process for the designation.

48. BCSO asked Ryan Watson to voluntarily surrender lawfully purchased firearms before filing an ERPO petition.

49. BCSO filed an Extreme Risk Protective Order petition against Ryan Watson on or about August 1, 2023, after he declined to voluntarily surrender his firearms.

50. The ERPO petition omitted that BPD Major Samuel Hood had previously cleared Ryan Watson and that Deputy Justin Goffe had independently cleared him and refused to sign the petition.

51. The ERPO petition used Deputy Goffe's name as petitioner without his knowledge or consent and cited Ryan Watson's civil-rights complaints against BCSO as evidence of danger.

52. The ERPO was executed at Ryan Watson's parents' home (in Howard County, outside of Baltimore County jurisdiction), and Plaintiff's firearms were taken by BCSO.

53. The ERPO was dismissed at the petitioner's request on or about August 7, 2023, and Ryan Watson was not notified of the dismissal.

54. Ryan Watson's firearms were never submitted to BPD's Evidence Control Unit, that BPD's Evidence Control Unit confirmed in writing that no submission receipts exist, and that the firearms remain unaccounted for.

55. BCSO recorded a false "does not live" notation at 1815 Gough Street during ERPO service and that the notation affected DHCD's parallel residency-based enforcement theory.

56. Major Poma coached Deputy Young during ERPO service and laughed during the service event, as reflected in body-worn camera video.

57. BCSO personnel and DHCD personnel used law-enforcement or quasi-law-enforcement measures in connection with what was, at most, a civil short-term rental licensing dispute.

58. Deputy Henderson and other BCSO deputies entered Latonya K. Watson's private residence without a warrant, without her consent, and without lawful justification, and the entry was captured on her interior security camera system.

59. The Baltimore City Office of Equity and Civil Rights investigated a civil-rights complaint arising from Henderson's entry into Latonya K. Watson's home under case number CRB2023-0051, and that Lisa A. Kelly, Chief of Investigations and Acting Deputy Director, confirmed in writing that a determination letter was sent to Sheriff Cogen on March 19, 2024.

60. Sheriff Cogen received written notice from the City's civil-rights office concerning Henderson's conduct and took no corrective action.

61. Major Poma made multiple telephone calls to Latonya K. Watson's personal cell phone after the ERPO enforcement operation and after the seizure of Ryan Watson's firearms.

62. Armed BCSO personnel were deployed to Latonya K. Watson's residence in the context of a civil housing and short-term rental licensing dispute.

63. On November 18, 2025, DHCD's Zoning Administration and Enforcement Division sent personnel to Latonya K. Watson's licensed short-term rental property at 409 S. Regester Street, where a DHCD zoning notice was posted, evidencing continued enforcement pressure after prior proceedings concerning her property had failed or been resolved in her favor.

64. Latonya Watson's security cameras captured the November 18, 2025, DHCD zoning visit and return visit, and that the visit occurred after she had prevailed in prior ECB and STR administrative proceedings concerning her property.

65. Defendants retaliated against Ryan Watson for protected speech, petitioning, public criticism, MPIA activity, and administrative or judicial challenges.

66. Sheriff Cogen personally initiated a 911 call in December 2024 identifying Ryan Watson by description while Ryan Watson was engaged in political leafletting.

67. Ethan Hasiuk forwarded Ryan Watson's protected Facebook speech to BPD on March 12, 2025, copied Cohen on that communication, and that BPD later confirmed in writing that Ryan Watson's Facebook post criticizing Cohen was entered into a homeland-security investigative database.

68. Cohen's office admitted during MPIA-related proceedings that communications between Cohen and BPD's Alan Woods had been deleted.

69. Councilmember Zac Blanchard emailed Cohen on March 12, 2025, thanking him for strategy advice and for a conversation with Sheriff Cogen.

70. Private neighborhood actors and associations coordinated with public officials concerning Ryan Watson, his properties, and enforcement pressure, including through communications in which Kate Grabowski admitted that criminal characterizations of Ryan Watson came from the Sheriff's Office.

71. Private actors published false statements describing Ryan Watson as a criminal, as operating an illegal business, as being under investigation, as causing neighborhood thefts, or as presenting a threat to neighbors.

72. Those statements were false because Ryan Watson was never convicted of any offense and his City-issued STR license was found by the ECB to remain valid.

73. Grabowski used a Johns Hopkins institutional email account and institutional affiliation to communicate about Ryan Watson with City enforcement officials, including McGinnis and Cohen.

74. BCSO and private neighborhood actors coordinated through formal and informal channels concerning Ryan Watson and his properties, including through an FHNA-BCSO memorandum of understanding.

75. BCSO's authority is principally court-related, including service of process, execution of writs, court security, prisoner transport, and domestic-violence order service, and does not authorize proactive investigations into private citizens' short-term rental licensing or housing-code compliance.

76. Plaintiffs provided written notice of their claims and alleged constitutional violations to Defendants and their agents through written complaints, formal claims, civil-rights submissions, MPIA correspondence, and administrative or judicial proceedings.

77. Beginning in early 2023 and continuing through this action, Ryan Watson submitted written complaints to DHCD, BCSO, the Baltimore City Council President's office, and the Baltimore City Law Department identifying the alleged pre-hearing takedown of STR listings, coercive demands, BCSO involvement in a civil licensing dispute, ex parte communications, and stigmatizing statements communicated to private neighborhood actors.

78. On or about November 27, 2023, the Baltimore City Department of Law, Central Bureau of Investigation, issued a written acknowledgment assigning claim number 230016833-114 to Ryan Watson's formal claim arising from the December 21, 2022 incident at 409 S. Regester Street. On December 4, 2023, Claims Investigator Patrick Hancock confirmed in writing that claim number 230016833 concerned the Sheriff's Department and was under investigation.

79. Ryan Watson also submitted civil-rights complaints to oversight agencies, including the Baltimore City Office of Inspector General, the Maryland Office of the Attorney General, and the U.S. Attorney's Office for the District of Maryland Civil Rights Division, and served or provided a Notice of Litigation to the Mayor and City Council of Baltimore, DHCD, and BCSO.

80. Defendants also received notice of Plaintiffs' claims through ECB proceedings, peace-order proceedings, and the ERPO proceeding, including proceedings in which McGinnis appeared personally, Rudasill appeared as City counsel, Poma appeared at peace-order proceedings, and Cogen appeared at peace-order proceedings in uniform.

81. Ryan Watson submitted multiple MPIA requests to BCSO, DHCD, and the Office of the Baltimore City Council President seeking records concerning the enforcement campaign, speech referrals, ERPO and firearms evidence handling, FHNA-BCSO communications, DHCD security or threat-designation records, and communications between Cohen, Cohen's staff, and BPD personnel.

82. Ryan Watson submitted an MPIA request to BCSO on or about July 27, 2025, and BCSO failed to respond within the statutory thirty-day period required by Md. Code Ann., Gen. Prov. § 4-203(a).

83. On April 10, 2025, the Public Information Act Compliance Board issued a ruling in Case No. 25-51 finding that BCSO violated Md. Code Ann., Gen. Prov. § 4-203(a) by failing to timely respond to Ryan Watson's MPIA request.

84. Ryan Watson submitted an MPIA request to DHCD on or about August 5, 2025, seeking records concerning complaints, threat allegations, surveillance, private complainants,

neighborhood actors, the "Security Information — Ryan Watson" designation, law-enforcement coordination, and political-office coordination.

85. DHCD and the City Council President's office provided deficient MPIA responses by imposing unreasonable search limitations, requiring Ryan Watson to identify specific personnel rather than searching by unit or subject matter, asserting broad privileges or exemptions, and failing to conduct adequate searches.

86. These MPIA failures obstructed access to records material to Plaintiffs' claims, including records concerning the alleged enforcement campaign, law-enforcement referrals, deleted communications, firearms evidence handling, and coordination between public officials and private actors.

87. The Office of the Public Access Ombudsman issued a Final Determination on December 19, 2025, in Mediation File No. 1202-02-26, finding the MPIA dispute unresolved.

88. Ryan Watson filed a formal complaint with the PIA Compliance Board on December 22, 2025, and served a written Litigation Hold Notice on the Office of the Baltimore City Council President, BCSO, DHCD, the Baltimore City Department of Law, and relevant City employees and agents.

89. The December 22, 2025, Litigation Hold Notice directed preservation of communications concerning Hasiuk's referral to BPD, Cohen-BPD communications, DHCD's "Security Information — Ryan Watson" records, MPIA-requested records, and DHCD accounts, archives, shared drives, and repositories associated with McGinnis.

90. The City admitted communications between Cohen and BPD's Alan Woods had been deleted.

91. The PIACB later found an affidavit submitted for Cohen's office insufficient to evaluate the adequacy of the search for records concerning referral of Ryan Watson's protected speech to law enforcement.

92. The acts described above were not isolated mistakes, but related components of a course of conduct involving public officials, law-enforcement personnel, administrative actors, and private participants.

93. Defendants' conduct caused economic losses, reputational harm, emotional distress, impairment of property and business interests, loss of seized property, loss of goodwill, litigation and administrative burdens, and continuing injury.

## STATUTE OF LIMITATIONS

94. Plaintiffs allege that their claims accrued within the applicable limitations periods or are subject to the discovery rule, continuing-violation doctrine, equitable tolling, or other applicable accrual principles.

95. The federal civil-rights claims under 42 U.S.C. §§ 1983 and 1985(3) are governed by Maryland's three-year personal-injury limitations period.

96. The claims arise from related conduct beginning in or about December 2022 and continuing through at least 2025, including pre-hearing platform takedowns, ERPO-related acts, seizure and continued non-return of firearms, speech referrals, public-records obstruction, and related retaliatory or coercive conduct.

97. Certain injuries were continuing or later discovered, including the continued non-return of Ryan Watson's firearms, concealed defamatory communications in private email chains, the March 12, 2025, Hasiuk-to-BPD referral of Ryan Watson's protected Facebook speech, and BPD's November 2025 written confirmation that Ryan Watson's speech was entered into a homeland-security investigative database.

98. Defendants' MPIA obstruction, deletion of communications, deficient searches, and non-production of records delayed Plaintiffs' discovery of the full scope of the coordinated conduct alleged in this Complaint.

### COUNT I: Violation of 42 U.S.C. § 1981
(Against All Defendants)

99. Plaintiff realleges and incorporates all preceding paragraphs.

100.    Section 1981 guarantees all persons the same right to make and enforce contracts as enjoyed by white citizens.

101.    Plaintiff possessed contractual and prospective contractual relationships related to his STR business operations.

102.    Defendants intentionally interfered with Plaintiff's contractual and business relationships because of Plaintiff's race.

103.    Defendants impaired Plaintiff's ability to contract with customers, booking platforms, licensing agencies, and related business entities.

104.    Defendants' conduct was intentional, malicious, and racially motivated.

105.    As a direct and proximate result, Plaintiff suffered financial losses and other damages.

## COUNT II - Violation of 42 U.S.C. § 1983 – Due Process
(Against Public Defendants)

106.     Plaintiff realleges and incorporates all preceding paragraphs.

107.     Plaintiff possessed constitutionally protected property and liberty interests in his business operations, licenses, reputation, and lawful use of property.

108.     Defendants deprived Plaintiff of these interests without adequate notice, neutral procedures, or meaningful opportunity to be heard.

109.     Defendants engaged in arbitrary and selective enforcement targeting Plaintiff.

110.     Defendants acted under color of state law.

111.     Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment and Articles 24 and 40 of the Maryland Declaration of Rights.

## COUNT III - Tortious Interference with Business Relationships
(Against All Defendants)

112.     Plaintiff realleges and incorporates all preceding paragraphs.

113.     Plaintiff maintained valid business relationships and economic expectancies related to his STR operations.

114.     Defendants knew of those relationships.

115.     Defendants intentionally and improperly interfered with those relationships through coordinated complaints, defamatory statements, misuse of governmental influence, and improper regulatory pressure.

116.     Defendants acted with malice and without justification.

117.     Plaintiff suffered economic damages as a direct result.

### COUNT IV - Tortious Interference with Prospective Economic Advantage
(Against All Defendants)

118.     Plaintiff realleges and incorporates all preceding paragraphs.

119.     Plaintiff reasonably expected future economic benefit from continued STR operations.

120.     Defendants intentionally disrupted those economic opportunities.

121.     Defendants acted through wrongful means, including discriminatory conduct, abuse of authority, and defamatory communications.

122.     Plaintiff suffered damages.


### COUNT V - Civil Conspiracy
(Against All Defendants)

123.     Plaintiff realleges and incorporates all preceding paragraphs.

124.     Defendants entered into agreements and acted in concert to damage Plaintiff's business operations and economic interests.

125.     Overt acts included coordinated reporting campaigns, improper law-enforcement involvement, licensing interference, dissemination of defamatory information, and discriminatory enforcement activity.

126.     Defendants acted with unlawful purpose and discriminatory motive.

127.     Plaintiff suffered damages as a result.


### COUNT VI - Defamation
(Against Defendant Grabowski and Related Defendants)

70. Plaintiff realleges and incorporates all preceding paragraphs.

71. Defendants made false statements concerning Plaintiff and his business operations.

72. Defendant Grabowski attributed defamatory assertions regarding Plaintiff to information allegedly provided by Sheriff's Office personnel.

73. The statements were false, malicious, and harmful to Plaintiff's reputation and business interests.

74. Defendants published such statements to third parties.

75. Plaintiff suffered damages as a direct result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests judgment against Defendants, jointly and severally, and seeks:

A. **Compensatory Damages.** Award compensatory damages of a minimum of $750,000, to include the economic losses from the destruction of Plaintiffs' licensed short-term rental operations, loss of business income, loss of platform goodwill and status, out-of-pocket costs, loss or impairment of property, reputational harm, emotional distress, and all other legally recoverable injuries.

B. **Punitive Damages.** Award punitive damages against the individual Defendants and private Defendants, where permitted by law, in an amount sufficient to punish and deter intentional, malicious, reckless, or callously indifferent violations of Plaintiffs' federally and state-protected rights.

C. **Declaratory Relief.** Declare that Defendants' acts and practices violated the United States Constitution, the Maryland Declaration of Rights, the Maryland Public Information Act, and Maryland common law, including declarations that:

1. The pre-hearing use of government-to-platform mechanisms to disable licensed short-term rental listings before there were neutral adjudication violated due process;

2. The use of civil licensing processes for law-enforcement, retaliatory, or coercive purposes exceeded lawful authority;

3. The seizure and continued non-return of Ryan A. Watson's firearms violated Plaintiffs' constitutional and property rights;

4. The referral of protected speech to law-enforcement or intelligence channels constituted unlawful retaliation and viewpoint discrimination;

5. The warrantless entries, searches, data access, and seizure practices violated the Fourth Amendment and Article 26 of the Maryland Declaration of Rights;

6. Defendants' MPIA responses, non-responses, search limitations, deletion of records, and withholding practices violated the Maryland Public Information Act; and

7. Defendants' deletion, non-preservation, or failure to produce relevant records warrants appropriate evidentiary and remedial relief.

D. **Injunctive Relief.** Enter permanent and appropriate injunctive relief prohibiting Defendants and their officers, employees, agents, successors, and persons acting in concert with them from:

1. Retaliating against Plaintiffs for speech, petitioning, litigation, administrative complaints, MPIA requests, public criticism, or participation in public proceedings;

2. Disabling, requesting removal of, or otherwise impairing licensed short-term rental listings before constitutionally adequate notice and a neutral opportunity to be heard;

3.  Using civil licensing or administrative processes for purposes outside their lawful scope;

4.  Referring Plaintiffs' protected speech to law-enforcement or intelligence channels absent a lawful, non-retaliatory basis;

5.  Maintaining or circulating stigmatizing security, criminal, or threat designations concerning Plaintiffs without lawful standards and adequate process;

6.  Suppressing or blocking Plaintiffs' protected speech on official public-facing channels based on viewpoint; and

7.  Withholding public records in violation of the MPIA.

E. **Return of Property.** Order the immediate return of Ryan A. Watson's seized firearms and any related property, or, if return is impossible, award the current fair market value of the property, together with interest and any additional damages recoverable for loss, impairment, or unauthorized retention.

F. **MPIA Relief.** Order DHCD, BCSO, and the Office of the City Council President to conduct lawful, complete, and reasonable searches for responsive records; produce all non-exempt responsive records; provide legally sufficient explanations and privilege logs for any withheld records; and comply with all applicable MPIA obligations.

G. **Preservation and Evidentiary Relief.** Order appropriate preservation and remedial relief, including preservation of relevant accounts, devices, metadata, archives, shared drives, and agency repositories; production of preservation notices and privilege logs; targeted discovery where warranted; and adverse-inference, evidentiary, or other relief under Federal Rules of Civil Procedure, Rule 37(e), the Court's inherent authority, and applicable law.

H. **Attorney's Fees and Costs.** Award reasonable attorney's fees, litigation expenses, and costs where authorized, including under 42 U.S.C. § 1988 and Md. Code Ann., Gen. Prov. § 4-362.

I. **Interest.** Award pre-judgment and post-judgment interest to the fullest extent permitted by law.

J. **Further Relief.** Award such other and further legal, equitable, declaratory, injunctive, evidentiary, and monetary relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.

Dated: May 22, 2026

Respectfully submitted,

Dionna Maria Lewis, Esq.
Bar No. 19486
District Legal Group, PLLC
700 Pennsylvania Ave., SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com

.